# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**CAMERON ALLEN**                                                                      **PLAINTIFF**

**v.**                                                                                      **No. 3:16CV36-SA-JMV**

**HORN LAKE POLICE DEPT.**
**UNKNOWN OFFICERS**
**BENJAMIN SWAN**
**ELVIS ALLEN**                                                                      **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Cameron Allen, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants arrested and prosecuted him without probable cause. He also alleges that he lost personal property as a result of the arrest and prosecution and that a defendant defamed him by releasing information to the newspaper. The defendants have moved for summary judgment, and the plaintiff has responded. The matter is ripe for resolution. For the reasons set forth below, the motion by the defendants for summary judgment will be granted, and judgment will be entered for the defendants in all respects.

### Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of

contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

**Undisputed Material Facts**

A complete summary of the events which led to Cameron Allen's arrest may be found in the Horn Lake Police Department's Investigative Report, summarized below:

> On or about December 20, 2014, Elvis Allen (a defendant in this case) was the victim of an attempted assault and robbery at R&E Hot Wings in Horn Lake. The Horn Lake Police Department began to investigate the allegations, ultimately identifying Plaintiff as a possible suspect.
>
> *Later, on December 31, 2014, Defendant Elvis Allen picked Plaintiff out of a picture lineup, identifying plaintiff Cameron Allen as the person who attempted to steal his necklace and who also struck him with a rock at R&E Hot Wings.*
>
> Based upon this positive identification, Defendant Swan prepared a warrant for robbery on plaintiff Cameron Allen. Judge James Holland signed the warrant, setting a $100,000 bond on the warrant.
>
> Approximately two weeks later, on January 15, 2015, Defendant Swan obtained information that Cameron Allen was in custody with the Memphis Police Department for unrelated domestic related charges as well as being a felon in possession of ammunition.
>
> Then, on January 26, 2015, the plaintiff's case was sent for review by the Detective Division Commander before being sent to the District Attorney's office for possible indictment.
>
> On March 3, 2015, Plaintiff appeared before Judge Holland and was bound over to the DeSoto County Grand Jury on the charge of robbery under Miss. Code Ann. § 97-3-79. His bond remained at $100,000 (or $15,000 with GPS monitoring).
>
> On March 19, 2015, in Cause no. CR2015-0213, Plaintiff was indicted by a DeSoto

County Grand Jury for the charge.

The italicized portion above would, at first blush, appear to be in dispute, because the plaintiff, Cameron Allen, alleges that the victim, Elvis Allen, actually did not pick him from a lineup – and filled out the lineup sheet to that effect. He states that defendant Swan then altered the form to show that Elvis Allen *did* identify the plaintiff as his attacker. The plaintiff also alleges that, in a recorded telephone call placed by Bernard Jackson on August 15, 2014, at approximately 3:03 p.m., victim Elvis Allen acknowledged that he never picked plaintiff Cameron Allen out of a lineup, never accused him of anything, and had never known or met him. The court notes that the alleged telephone call took place some four months *before* the lineup regarding the robbery at issue in this case. The plaintiff's criminal defense attorney set forth that date and time in a subpoena, and the plaintiff repeated date and time in his response [24] to the instant motion for summary judgment, as well as a supplemental brief [26] in opposition to that motion. The plaintiff filed the supplemental brief *after* the defendants pointed out the fact that the telephone call occurred before the crime. The telephone conversation is thus unrelated to this case.

## Defendant Elvis Allen Is Not a State Actor

Relief under 42 U.S.C. § 1983 is only available to preserve a plaintiff's federal constitutional or statutory rights against a defendant acting *under color of state law*. *See* 42 U.S.C. § 1983. Thus, a § 1983 plaintiff may only pursue his civil rights claims against someone who is a state actor. Elvis Allen is merely the victim of a crime who participated in a photographic lineup to identify his attacker. Thus, he does not qualify as a state actor under 42 U.S.C. § 1983. *See, Albright v. Longview Police Dep't*, 884 F.2d 835, 841 (5th Cir. 1989) (mere contractual link between county and corporation insufficient to find corporation to be a state actor). In addition, the plaintiff has not alleged that Elvis Allen's actions harmed him; the plaintiff alleged that Elvis Allen could not identify him in

the lineup. Thus, the plaintiff's claims against Elvis Allen will be dismissed for failure to state a claim upon which relief could be granted.

## Probable Cause

The plaintiff alleges that he was arrested and detained in the absence of probable cause. He thus claims that the defendants maliciously prosecuted him. Probable cause to arrest exists when, at the time of arrest, the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a police officer of reasonable caution to believe an offense has been or is being committed.[1] *See Duckett v. Cedar Park,* 950 F.2d 272, 278 (5th Cir.1992) (citing *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995)). The probable cause requirement does not mandate a showing that such a belief is correct or more likely true than false. *Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). A law enforcement officer executing an arrest warrant is not required by the Constitution to independently investigate every claim of innocence. *Id.* "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Baker*, 443 U.S. at 145. A person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not entitled to a separate judicial determination that probable cause exists to detain him prior to trial. *Id.* at 144.

The first question before the court is whether Elvis Allen's identification of the plaintiff from a photographic lineup is sufficient to establish probable cause to arrest him. Certainly, the answer is "yes." An eyewitness who identifies a defendant as the perpetrator of a crime has established sufficient facts and circumstances within the knowledge of an arresting officer to cause an officer of

---

[1] Whether a court is determining probable cause to issue a warrant prior to arrest – or deciding whether probable cause exists to hold a defendant after a warrantless arrest – the standard is the same. *Baker v. McCollan*, 443 U.S. 137, 143, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

reasonable caution to believe an offense has been committed. In addition to the photographic lineup, Officer Swan had recalled that, less than a month before, the plaintiff and a man wanted on a parole violation had been questioned after acting suspiciously behind the strip mall where R&E Hot Wings, the location of the alleged crime. Neither man could explain why they were walking behind the businesses, and their stories did not make any sense. They had walked rapidly away upon seeing the police. Officers found a black ski mask and a toboggan (which are often used in robberies) under an employee's vehicle nearby. One of the men was Cameron Allen. He had been stopped, a few weeks prior, who sped up upon seeing the police, accompanying a fugitive who had violated parole, near discarded items frequently used in robberies, and who offered a story quickly refuted. He also matched the victim's description of the suspect. It was this knowledge that led Officer Swan to include the plaintiff's photograph in the lineup. Armed with this knowledge, Officer Swan had probable cause to arrest Cameron Allen for robbery.

As a valid photographic lineup easily establishes probable cause to arrest and detain a suspect, the plaintiff attempts to undermine a finding of probable cause, alleging that defendant Elvis Allen did *not* recognize him in the photographic lineup. He alleges that, after Elvis Allen checked the box indicating that he could not identify anyone in the lineup, defendant Swan falsified the lineup sheet to show that Elvis Allen *did* pick the plaintiff from among the six photographs in the lineup. He offers only his interpretation of the lineup sheet – and his bare allegation regarding the existence of a recorded telephone conversation on August 15, 2014, during which Elvis Allen stated that he did not know the plaintiff and never identified him in a lineup. He produced a subpoena drafted by his criminal defense attorney requesting the recording. The plaintiff alleges that in the recording Elvis Allen states that he does not know the plaintiff, never met him, and never identified him in a lineup.

As discussed below, these allegations are not sufficient to create an issue of material fact sufficient to defeat a motion for summary judgment.

The plaintiff is correct in stating that there are corrections on the lineup sheet. There is an "x" in the checkbox beside the words, "I did not make a positive identification of any of the above photographs." That "x" is scratched out, and the initials "E.A." appear beside the box. Similarly, a partial signature, "Elvis," appears on the line for "Description of Crime," and that is also scratched out, replaced by the word "robbery." Immediately below, there is an "x" in the box next to the words, "I identified # _____", and the number "3" appears in that blank. Thus, taking into account the corrections, the relevant text reads:

> On December 31, 2014, I[,] Elvis Allen, was shown the photographs numbered above. After reviewing the above photographs: I identified #3 as the person responsible for robbery on December 20, 2014.

Doc. 25-1 at 3. The statement is followed by signatures: "Elvis Allen," and the witness, Officer Swan.

Based upon the scratching out of the "x" in the checkbox indicating a failure to identify any of the photographs, plaintiff Cameron Allen argues that Officer Swan must have altered the document. Officer Swan's affidavit, however, sets forth a more natural sequence of events:

> On or about December 31, 2014, I met with Elvis Allen, the victim, at which time he participated in a photo lineup. A copy of said photo lineup is attached to this Affidavit as Exhibit A.
>
> After reviewing the six (6) photographs that are contained with Exhibit A, Elvis Allen identified the Plaintiff in photo no. 3. At that time, Elvis Allen inadvertently checked the box which indicated that he did not make a positive identification of any of the individuals contained in the photos. In order to correct his mistake, he scratched out the "X" in that particular box and then checked the box which reads, "I identified number 3." In order to acknowledge his error and correction of same, he wrote his initials (E.A.) next to the box that he scratched out. All of these described the markings can be seen on Exhibit A.
>
> Elvis Allen was clearly not familiar with the subject photo lineup, something that is further evident by the fact that he began to sign his name in the line reserved for

> "description of the crime." He corrected this oversight by scratching through the first name and then writing his full name in the proper signature line immediately below.
>
> I was present at all times while Elvis Allen participated in this photo lineup process. My signature is also written in the blank reserved for "Officer's signature" in the top right of the subject document. I observed Elvis Allen complete this photo lineup and observed him write in every place that contains his handwriting. This includes my observation of his checking the wrong box, correcting his mistake[], and then initialing the same.

Doc. 25-1 at 2.

First, as the alleged recorded telephone conversation took place four months *before* the crime at issue, it could not possibly refer to that crime or the subsequent lineup. Second, the plaintiff has nothing more than suspicion to support his allegation that Officer Swan altered the lineup document. Thus, there is nothing to bolster the plaintiff's allegation that Officer Swan did so. Third, Officer Swan, who was present at the lineup, unequivocally refutes that allegation in his affidavit. Fourth, the plaintiff has not explained why Officer Swan might wish to manufacture evidence against him in a criminal proceeding, risking termination of a 9-year career in law enforcement. Fourth, it is implausible that Officer Swan, a longtime law enforcement officer, would be unfamiliar with a lineup sheet and fill it out improperly (signing the wrong line with Elvis Allen's name).

As set forth above, the party opposing a motion for summary judgment must present proof to substantiate his allegations. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita, supra*, "conclusory allegations," *Lujan, supra*, "unsubstantiated assertions," *Hopper, supra*, or by a mere "scintilla" of evidence, *Davis, supra*. That is all the plaintiff has offered to support his assertion that Officer Swan falsified the photographic lineup sheet, and it is not enough to create a genuine issue of material fact to overcome the defendants' motion for summary judgment.

The photographic lineup established probable cause for the warrant for the plaintiff's arrest to issue. As such, judgment will be entered in favor of the defendants as to the plaintiff's claims based upon want of probable cause: arrest without probable cause and malicious prosecution. *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). In addition, malicious prosecution is not cognizable under 42 U.S.C. § 1983, and it will be dismissed for that reason, as well.

## Defamation – State Law Claim

The plaintiff alleges that he suffered emotional distress and defamation of character as a result of the defendant's actions. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Injury to reputation by false and defamatory statements is not a right protected by due process; as such, it is not cognizable under 42 U.S.C. § 1983. *Paul v. Davis*, 424 U.S. 693, 712, 96 S. Ct. 1155, 1166, 47 L. Ed. 2d 405 (1976). The plaintiff does not have a constitutional right to be free from defamation or emotional distress. *Kerr v. Lyford,* 171 F.3d 330, 339 (5th Cir. 2003), *abrogated on other grounds by Castellano v. Fragozo,* 352 F.3d 939, 948–49 (5th Cir.2003) (citing *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)); *Shinn v. College Station Indep. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir.1996) (per curiam) (there is no freestanding constitutional right to be free from emotional distress); *see also Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005), 42 U.S.C. § 1997e(e) (a *pro se* prisoner plaintiff in a case filed under 42 U.S.C. § 1983 must allege more than *de minimis* physical injury to state a claim for psychological or emotional damages). As such, his claims for relief under 42 U.S.C. § 1983 regarding these allegations must be dismissed.

## Municipal liability

The plaintiff's allegations against the City of Horn Lake must be dismissed, as he has not alleged a policy or custom of the city which caused the harm he has alleged. To establish municipal liability under § 1983, a plaintiff must demonstrate that an official municipal policy or custom caused the constitutional violation alleged. *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995). The plaintiff has alleged no facts to indicate that any policy-making officials for the city implemented an official policy that caused the alleged constitutional violation; nor has he established a persistent pattern of conduct by city officials that caused the alleged violation. In a § 1983 action, liability may not be imposed upon a governmental entity on a theory of *respondeat superior* for the actions of non-policy making government employees. *Monell*, 436 U.S. at 690-94; *see Doe v. Rains County Independent School District*, 66 F.3d 1402, 1409 (5th Cir. 1995); *Brown v. Bryan County, Texas*, 53 F.3d 1410, 1418 (5th Cir. 1995); *Wilson v. Barrientos*, 926 F.2d 480 (5th Cir. 1991). For these reasons, the defendants' motion for summary judgment as to this issue will be granted.

## Due Process Claim Subsumed by Fourth Amendment Claim

In his complaint, Cameron Allen refers to a violation of his "due process" rights. Doc. 1. He did not flesh out this allegation or otherwise explain which constitutional provision the defendants might have violated, how those rights were violated, or by whom. The plaintiff's broad due process clause claim cannot proceed, as it is contained in his allegation that he was arrested without probable cause in violation of the Fourth Amendment. The Supreme Court has made clear that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 108 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Put another way, if a specific provision of the

Constitution protects a plaintiff's rights (the Fourth Amendment, in this case), the substantive due process claim must fail. Cameron Allen must bring his claim under a specific constitutional provision (the Fourth Amendment), not under a general due process standard. The plaintiff's claim of a due process violation will therefore be dismissed.

## Qualified Immunity

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir.2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt, supra*. In this case, the plaintiff alleged, without any proof, that Officer Swan falsified an official police document to secure an arrest warrant. If the allegation were true, then the plaintiff would be able to overcome a qualified immunity defense – because falsifying police documents to obtain an arrest warrant is objectively unreasonable. However, as discussed in detail above, the plaintiff has only his bare assertion to support that allegation, and that is not enough to survive summary judgment. As

Detective Swan relied upon an eyewitness photographic identification, his actions were objectively reasonable, and he enjoys qualified immunity regarding this claim.

**Taking of Property Without Due Process of Law**

Mr. Allen's claim regarding the taking of his property is unclear. To the extent that he alleges the defendants confiscated his personal property, that claim is not cognizable in federal court.[2] The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). This rule, the Paratt/Hudson doctrine, provides "that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct." *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson*, 486 U.S. at 533, *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 Fed.Appx. 731 (5th Cir. 2011). Thus, the initial question before the court as to the plaintiff's claim regarding the taking of his property is whether Mississippi law affords him an adequate post-deprivation remedy for his loss.

In most circumstances, suits against the Mississippi government would be controlled by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9 ("MTCA"), which became effective on April 1, 1993. As to suits filed by prisoners, the MTCA states:

> (1) A governmental entity and its employees acting and within the course scope of their employment or duties shall not be liable for any claim:
>
> . . .

---

[2] Mr. Allen also seems to allege that his detention caused him to lose personal property, "due to [his] being incarcerated," rather than from the defendants actually seizing his property. This is merely a claim for damages arising out of his allegations concerning the legality of his detention, which is discussed in detail above.

> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code Ann. § 11-46-9(1)(m). At first blush, this statute would seem to foreclose any remedies the plaintiff may have under state law. However, the plaintiff's remedy for the taking of property arises directly from the Constitution of the State of Mississippi, which cannot be circumvented through a state statute. *Pickering v. Langston Law Firm, P.A.*, 88 So.3d 1269 (Miss. 2012). The unlawful taking of an inmate's property can violate Article 3, Section 17 of the Constitution of the State of Mississippi. *Bishop v. Reagans*, 2012 WL 1804623 (S.D. Miss.), *citing Johnson v. King*, 85 So.3d 307 (Miss.App.,2012). Article 3, Section 17 of the Mississippi Constitution reads:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use by the public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

The circumstances in Johnson are legally indistinguishable from those in the instant case. The prison officials in that case confiscated Johnson's drinking mug and disposed of it. *Johnson v. King*, 85 So.3d 307, 311-312 (Miss. App. 2012). Johnson had purchased the mug from the canteen with his own money. *Id*. The mug as purchased was not considered contraband, and Johnson had not modified the mug in such a way to turn it into contraband. *Id*. The Mississippi Court of Appeals held that, under these circumstances, the taking of Johnson's mug violated the Mississippi Constitution and that prison officials had to either replace the mug or compensate Johnson for the fair value of the mug. *Id*. To the extent that the plaintiff alleges that the defendants confiscated his personal property and did not return it, he has an adequate remedy under state law, and those allegations must be dismissed for failure to state a claim upon which relief could be granted.

**Conclusion**

For the reasons set forth above, the defendants' motion for summary judgment will be granted, and judgment will be entered for the defendants in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 13th day of September, 2017.

   /s/ Sharion Aycock
U. S. DISTRICT JUDGE